# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ABDUL HOWARD,<br><br>　　　　Defendant. | 2:13–cr–186–GMN–VCF<br><br>**REPORT & RECOMMENDATION** |

　　This matter involves the Government's prosecution of Abdul Howard for the armed robbery of multiple 7-Elevens in Las Vegas, Nevada. Before the court is Howard's motion to dismiss the Government's Superseding Indictment (#87[1]). The Government filed an opposition (#102). Howard did not file a reply. For the reasons stated below, Howard's motion should be denied.

## BACKGROUND

　　On January 15, 2013, Officer Joshua Logan was assisting crime scene investigators in connection with an armed robbery of a Las Vegas area 7-Eleven. (Def.'s Mot. to Dismiss (#87) at 5:13–17). During the investigation, Officer Logan discovered a shell casing. (*Id.*) The casing matched other casings found in similar robberies. (*Id.*) Using the casing, the Las Vegas Metropolitan Police Department traced the robberies to Defendant Abdul Howard. (*Id.*) On May 21, 2013, Howard was indicted. (Indict. #1).

　　On October 1, 2013, Las Vegas Metropolitan Police Department began a second investigation. This time, the Department investigated one of its own: Officer Joshua Logan. (Exhibit A (#102-1) at 1).

---

[1] Parenthetical citations refer to the court's docket.

Logistics Analyst James Schneidewent had reviewed Officer Logan's fuel purchases and determined that the charges were highly irregular. (*Id.*)

The Las Vegas Metropolitan Police Department issues each of its officers gas cards. (*Id.*) Officers use the cards to refill their patrol cars. (*Id.*) Normally, gas-card transactions occur during the officers' shifts and near their assigned command posts. (*Id.*) However, Logan's charges were different. (*Id.*) In one fiscal quarter, Logan's transactions jumped from eleven transactions to fifty-four. (*Id.*) Additionally, Logan charged his card at various times of day and throughout various parts of Las Vegas. (*Id.*)

On October 8, 2013, Schneidewent began following Logan; and on October 14, 2013, the department obtained a GPS tracking warrant. (*Id.* at 2). Over the course of the next week, police officers followed Logan and observed Logan and his girlfriend repeatedly use the department's card to fill and refill their personal vehicles. (*Id.*)

Howard's trial began on October 21, 2013. (Mins. Proceedings #59). Because Logan investigated the alleged robberies, Logan testified on behalf of the Government on October 22, 2013. (Gov't's Opp'n (#102) at 3:20).

After Logan testified, trial adjourned at 3:30 p.m. (Mins. Proceeding #62). At 5:37, p.m., Logan's girlfriend was pulled over and questioned about her use of the gas card. (Exhibit A (#102-1) at 3). At 9:07 p.m., officers followed Logan and, again, observed him use the gas card to fill his personal vehicle. (*Id.*)

Logan and his girlfriend were arrested the next day at 3:30 p.m. (Gov't's Opp'n (#102) at 3:21). News of the arrest was published in the Las Vegas Review Journal and covered by local evening news outlets. (Def.'s Mot. to Dismiss (#87) at 7 n. 1, 9 n. 2–3). The next morning, Howard moved for a

mistrial, which the Honorable Gloria M. Navarro, Chief U.S. District Judge, granted. (Mins. Proceedings #70).

Accordingly, on December 3, 2013, Howard filed the instant motion to dismiss. Howard argues that the Government's indictment should be dismissed because retrial exposes Howard to double jeopardy in violation of the Fifth Amendment. (*See* Def.'s Mot. to Dismiss (#87) at 2–3).

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12 governs pleadings and pretrial motions. Under Rule 12(b)(3)(A), a criminal defendant "must" move to dismiss the indictment before trial if there is an alleged "defect in instituting the prosecution." *See* FED. R. CRIM. P. 12(b)(3)(A); *United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010). An indictment is sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution. *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citations omitted); *see also* FED. R. CRIM. P. 7(c). This means that an indictment is sufficient under the rules if the legal allegations are conclusory. *See id*; *accord United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) ("The indictment is sufficient if it charges in the language of the statute.").

When examining a motion to dismiss under Rule 12, the court must take the indictment's allegations as true. 1A WRIGHT & LEIPOLD, FEDERAL PRACTICE & PROCEDURE: CRIMINAL 4TH § 194 (citing, *inter alia*, *United States v. Sampson*, 371 U.S. 75, 78–79 (1962)). If the four corners of the indictment are sufficient, "the district court is bound by the . . . indictment." *See United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). If necessary, the court may make preliminary findings of fact to decide questions of law, such as whether the defendant will be exposed to double jeopardy. *See United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). However, the court may not

invade the province of the jury and decide by pretrial motion matters "of the general issue." *Id.*; FED. R. CRIM. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue").

When deciding a pretrial motion brought under Rule 12, the court's role is merely to determine whether the indictment is facially valid, and not whether either party is entitled to judgment on the pleadings. *See, e.g., United States v. Titterington*, 374 F.3d 453, 457 (6th Cir. 2004) ("[A] pretrial motion alleging a 'defect in the indictment' under [Rule] 12(b)(3)(B), represents the modern equivalent of a 'demurrer' because both pleadings serve to attack the facial validity of the indictment"); *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (citation omitted) ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence").

## DISCUSSION

Howard's motion presents one question: whether the Government's superseding indictment exposes Howard to double jeopardy on account of the Government's alleged failure to produce *Brady* evidence related Officer Logan's theft. (*See* Def.'s Mot. to Dismiss (#87) at 2–3). This argument fails as a matter of law.

The Fifth Amendment's double jeopardy clause provides that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The concept of double jeopardy is one of the oldest western legal principles. *See Bartkus v. Illinois*, 359 U.S. 121, 151 (1959) (citing DIG. OF JUSTINIAN 48.2.7.2 (533)). It protects criminal defendants from four distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; multiple punishments for the same offense; and, in certain circumstances, a second prosecution for the same offence after a mistrial is declared. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982).

4

By contrast, the Fifth Amendment's due process clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The due process clause guarantees criminal defendants the right to a fair trial. *Buchalter v. New York*, 319 U.S. 427, 429 (1943). In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court determined that the due process clause requires the government to disclose information that may be "favorable" to the defense. *Brady*, 373 U.S. at 87 (1963). This includes impeachment evidence, such as possible evidence of Officer Logan's reputation for untruthfulness under Federal Rule of Evidence 608. *See Giglio v. United States*, 405 U.S. 150, 154–55 (1972); *United States v. Dotson*, 799 F.2d 189, 193–94 (5th Cir. 1986).

As noted by the Tenth Circuit, failure to produce such evidence could—at "most"—require a new trial. *United States v. Lewis*, 368 F.3d 1102, 1107 (9th Cir. 2004) (citing *United States v. Davis*, 578 F.2d 277, 280 (10th Cir. 1978)). This is because *Brady* is a prophylactic, which protects the defendant's due process right to a fair trial. *Id.* Accordingly, the Third, Ninth, and Tenth Circuits have held that the Fifth Amendment's double jeopardy clause is not invoked by a *Brady* violation. *United States v. Coleman*, 862 F.2d 455, 458 (3rd Cir. 1988); *Lewis*, 368 F.3d at 1107; *Davis*, 578 F.2d at 280.

As a result, Howards' argument that the Government's alleged *Brady* violation risks double jeopardy fails as a matter of law. *Brady* ensures that criminal defendants, like Howard, receive fair trials. *Buchalter*, 319 U.S. at 429. In light of Officer Logan's theft, a second trial does not violate Howard's constitutional rights; rather, it guarantees Howard's constitutional rights.[2] *See Lewis*, 368 F.3d at 1107 ("Here, [defendant] already has the very remedy that *Brady* prescribes, a second trial. Any evidence that the prosecution allegedly withheld is now known and available for trial.") (citation omitted).

---

[2] Because *Brady* violations do not invoke the double jeopardy clause, *Lewis*, 368 F.3d at 1107, the question of whether the Government, in fact, violated *Brady* is moot.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Defendant Howard's motion to dismiss (#87) be DENIED.

IT IS SO RECOMMENDED.

DATED this 11th day of February, 2014.

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE