# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

## ***

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

ABDUL HOWARD,

                Defendant.

2:13–cr–186–GMN–VCF

**REPORT & RECOMMENDATION**

This matter involves the Government's prosecution of Abdul Howard for the armed robbery of multiple 7-Elevens in Las Vegas, Nevada. Before the court is Howard's motion to suppress (#91[1]). The Government filed an opposition (#103). Howard did not file a reply. For the reasons stated below, the court recommends partially denying Howard's motion and partially granting Howard's motion.

## BACKGROUND

Sometime in the spring of 2013, Abdul Howard was arrested and taken into custody at Clark County Detention Center for sexual assault. (*See* Def.'s Mot. to Suppress (#91) at 2:20–21). On April 26, 2013, North Las Vegas Police Department Detective Jesus Prieto interviewed Howard regarding the sexual assault and the robberies that are the subject of this matter. (*Id*. at 2:23). During the interview, Howard made allegedly incriminating statements regarding the sexual assault and the robberies. (*Id*. at 2:14).

Despite the incriminating nature of Howard's remarks, the Government agreed not to use Howard's statements at trial. (*Id*. at 2:13–14). This changed, however, when the court declared a

---

[1] Parenthetical citations refer to the court's docket.

mistral. (*Id*. at 2:16). The Government decided to use the incriminating statements at Howard's second trial, which is currently scheduled for April 29, 2014. (*Id*. at 2:18–19); (Mins. Proceedings #70).

Now, Howard moves to suppress the statements. Howard argues that the statements were (1) taken in violation of *Miranda v. Arizona* and (2) involuntary under the Fifth Amendment. (Def.'s Mot. to Suppress (#91) at 3:16–21). To support these arguments, Howard maintains that the audio recording of the interview is "untrustworthy" because it is "rife with audibility problems." (*Id*. at 3:11). Howard also argues that the transcript derived from the audio recording is "not an accurate portrayal of the interview." (*Id*. at 10).

## DISCUSSION

Howard's motion raises four questions: (1) whether the Government waived its right to introduce Howard's allegedly incriminating statements during retrial; (2) whether the Government's evidence of Howard's allegedly incriminating statements is admissible under the Federal Rules of Evidence; (3) whether Howard's statements were obtained in violation of *Miranda v. Arizona*; and (4) whether Howard's statements were "involuntary." Each question is addressed below.

## I.   Whether the Government Waived its Right to Introduce Howard's Statements at Retrial

The court begins its analysis of Howard's motion by recognizing that it is predicated on the Government's change in position. On October 15, 2013, the Government agreed not to use Howard's allegedly incriminating statements at trial. (Def.'s Mot. to Suppress (#91) at 2:13). This changed, however, when the court declared a mistrial on October 24, 2013. (*Id*. at 2:16–17). Following the mistrial, the Government notified Howard that it intended to use his incriminating statements at retrial. (*Id*.)

The court, therefore, begins its analysis by emphasizing that the Government did not waive its right to introduce Howard's allegedly incriminating statements during the new trial. A mistrial is a

nugatory proceeding. *See United States v. Mischlich*, 310 F. Supp. 669, 672 (D.N.J. 1970) *aff'd sub nom. United States v. Pappas*, 445 F.2d 1194 (3d Cir. 1971); *see also Newton v. Superior Court of Cal.*, 803 F.2d 1051, 1056 (9th Cir. 1986) (affirming the state court's determination that a mistrial is tantamount to no trial). This means that, at the new trial, the Government is not limited to the evidence presented at first trial. *United States v. Shotwell Mfg. Co.*, 355 U.S. 233, 243 (1957). Rather, the Government "is free to strengthen its case in any way it can by introduction of new evidence." *Id*.

## II.   Whether the Government's Evidence is Admissible

Howard's motion raises a second preliminary question: whether the Government's evidence of Howard's statements is admissible under the Federal Rules of Evidence. Howard argues, first, that the audio recording of the interview "is rife with audibility problems," which renders the recording "untrustworthy as a whole" and, second, that the transcript of the interview is "not an accurate portrayal of the interview." (*See* Def.'s Mot. to Suppress (#91) at 3:9–14). These arguments raise admissibility questions under Rules 1002 and 1003, which the court must address before turning to the merits of Howard's motion.[2]

Federal Rule of Evidence 1002 provides, in pertinent part, that "[a]n original writing, recording, or photograph is required in order to prove its content." However, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." FED. R. EVID. 1003. Where, as here, a recording is challenged because it is unintelligible or inaudible, admissibility is a matter within the sound discretion of the trial judge. *United States v. Carlson*, 423 F.2d 431 (9th Cir. 1970), *cert. denied*, 400 U.S. 847. The general rule regarding inaudible recordings parallels Rule 403.

---

[2] The parties did not brief these questions. The court, however, addresses them pursuant to its general gatekeeping duty under Federal Rule of Evidence 403.

Inaudible recording will be admitted "[u]nless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy." *Todisco v. United States*, 298 F.2d 208, 211 (9th Cir. 1961); *see also* FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . misleading the jury").

The court finds that the Government's evidence is admissible for three reasons. First, contrary to Howard's assertion, the audio recording is not inaudible. The audio recording's first sixteen seconds contain a negligible amount of white noise. (*See* Recording (#104) at 00:01–00:16). However, the white noise does not prevent the listener from discerning the content of the interview. Even if it did, however, the loss would be insubstantial. The first sixteen seconds contain the sound of a door closing, which is followed by introductions between Officer Prieto and Howard. (*See id.*) The court's conclusion that any audibility problem with the first sixteen seconds is insubstantial is bolstered by the fact that Howard did not argue that this portion of the recording is material to his motion.

Second, the court rejects Howard's contention that the transcript is "not an accurate portrayal of the interview." (*See* Def.'s Mot. to Suppress (#91) at 3:9–10). It is. Although the audibility could be better, the court reviewed the first thirty minutes of the 1:24:51 audio recording *in camera* and determined that the first thirty minutes substantially[3] match the transcript. Because Howard did not identify specific portions of the recording that are inaudible or inaccurate, the court's partial review of the recording satisfied its discretionary determination that there is no "substantial" issue concerning the recording's audibility or "genuine" issue concerning the transcript's accuracy. *See Todisco*, 298 F.2d at 211 (stating that recordings will only be excluded if the inaudible portion is substantial); *see also* FED. R. EVID. 1003 (stating that duplicates will only be excluded if there is a "genuine" issue concerning its accuracy).

---

[3] Specific inaccuracies (and alleged inaccuracies) are discussed in more detail below. (*See infra* § III.B.3).

Third, the court is unpersuaded by Howard's final argument, which asserts that the quality of the evidence, and particularly the transcript's "format," violates *Miranda v. Arizona*. (*See* Def.'s Mot. to Suppress (#91) at 5:10–20). Howard contends that because the transcript does not contain an introductory page, listed page numbers, or a full introduction, "the statements [contained in the transcript and recording] were obtained without a valid warning and waiver of rights under *Miranda v. Arizona*." (*Id.* at 5:19–20). This is incorrect.

Neither the Federal Rules of Evidence nor the Supreme Court's line of cases interpreting *Miranda v. Arizona* require the Government to present evidence in a specific form. The focal point of both is the substance of the evidence. *See* Fed. R. Evid. 102 (stating that the "rules should be construed . . . to the end of ascertaining the truth"); *Iowa v. Tovar*, 541 U.S. 77, 88 (2004) (stating that *Miranda v. Arizona* does not require that a particular "formula" of words or "script"). In general, the Government's departure from its ordinary practices might be a cause for concern. Here, however, there are no indicia of foul play or reasons to question the evidence's reliability—and Howard cites none.[4] (*See* Def.'s Mot. to Suppress (#91) at 5:10–20). Suppressing evidence requires more. *See, e.g.*, *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992) ("A defendant who seeks to suppress evidence bears the burden of making a prima facie showing of illegality. Reliance on vague, conclusory allegations is insufficient." (citation omitted)).

As a result, the court finds that the Government's evidence should be admitted because it complies with the rules and presents no substantial indicia of unreliability.

---

[4] Howard argues that the "transcript starts abruptly in the middle of conversation." (*See* Def.'s Mot. to Suppress (#91) at 5:18–19). It does not. It begins with introductions. (*See* Trans. (#103-1) at 2) ("All right. Abdul . . . Howard, correct? I'm a detective with the City of North Las Vegas . . .").

**III.**     **Whether Howard's Interview Violated *Miranda v. Arizona***

Howard's motion presents a third question: whether the Government violated *Miranda v. Arizona*. Before addressing the merits of Howard's arguments, the court begins its analysis by reviewing the Supreme Court's interpretation of its decision in *Miranda v. Arizona*.

**A.**     ***Incriminating Statements under* Miranda v. Arizona**

The Fifth Amendment provides, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In *Miranda v. Arizona*, the Supreme Court determined that the government must issue *Miranda* warnings and obtain a valid waiver of *Miranda* rights before a defendant's confession can be admitted into evidence in the prosecutor's case in chief. *Miranda*, 384 U.S. 436 (1966); *Harris v. New York*, 401 U.S. 222 (1971) (holding that confessions obtained in violation of *Miranda* may be used for impeachment purposes). *Miranda* warnings are prophylactic and are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 444 (1974).

"A heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retain or appoint counsel." *Miranda*, 384 U.S. at 475. To prove valid waiver, the government must show that (1) the waiver was voluntarily made and not the product of government coercion, and (2) that at the time of the waiver the defendant understood both the nature of the right being waived and the consequence of the waiver. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

**B.**     ***Application of* Miranda v. Arizona *to Howard's Interrogation***

Howard makes various arguments that his answers to questions from Detective Prieto are inadmissible. He contends (1) Detective Prieto's *Miranda* warnings were inadequate; (2) Howard's

6

waiver was invalid; and (3) Howard withdrew his waiver and invoked his *Miranda* rights at three points during the interrogation. (*See* Def.'s Mot. to Suppress (#91) at 5:1, 6:11, 6:22); (*see also* Min. Proceedings #116). Each argument is addressed below.

1.    Whether Detective Prieto's Warnings were Inadequate

The court first considers whether Detective Prieto's *Miranda* warnings were adequate. *Miranda* does not require the Government to read a script or recite a specific formula of words. *Tovar*, 541 U.S. at 88. Rather, "[t]he inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Florida v. Powell*, 559 U.S. 50, 52 (2010) (citing *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989)).

Howard attacks the adequacy of Detective Prieto's *Miranda* warnings on two grounds. First, Howard argues that Detective Prieto's *Miranda* warnings were inadequate because "[t]he transcript starts abruptly in the middle of conversation" and "[t]he recording and transcript do not contain the whole interview." (Def.'s Mot. to Suppress (#91) at 5:16–20). This argument is unpersuasive. As discussed above, Howard's assertion that the transcript starts in the middle of conversation is factually wrong. (*See supra* § II n. 3). Additionally, a cursory review of the transcript's first page demonstrates that Detective Prieto "reasonably conveyed" Howard's rights:

> Prieto: Okay, Abdul. You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to the presence of an attorney during questioning. If you cannot afford an attorney, one will be appointed to you free of charge prior to any questioning. Do you understanding your rights? You've got to say yes or no.

(Trans. (#103-1) at 2:9–13). This warning is clear and unequivocal. Additionally, it tracks the *Miranda* opinion almost exactly. *See Miranda*, 384 U.S. at 479 (holding that suspects must be warned "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has

the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning.").

Howard attacks the adequacy of Detective Prieto's *Miranda* warnings on a second ground. During the court's March 26, 2014 hearing, Howard testified that Detective Prieto never mirandized him. Howard testified that Prieto intentionally look long pauses during the interview that were later used to dub in another person's voice and create a conversation that never actually occurred. The reason Prieto did this—according to Howard's testimony—was to avoid mirandizing Howard when, in fact, Howard knew that he should be mirandized. In support of this conclusion, Howard cited his thirty-some years of experience as a criminal suspect and defendant.

This argument is unpersuasive. To demonstrate that a defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retain or appoint counsel, the Government must show, *inter alia*, that Howard "understood both the nature of the right being waived and the consequence of the wavier." *Burbine*, 475 U.S. at 421. Additionally, when determining whether Howard validly waived his *Miranda* rights, the court must also consider the extent of Howard's prior experience with law enforcement. *See United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007) (citing *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998)).

Here, Howard's testimony demonstrates that his extensive history with the criminal justice system taught him both the nature of his *Miranda* rights and the consequence of waiving those rights. Howard testified that Detective Prieto said nothing because Detective Prieto allegedly intended to add the *Miranda* warnings to the audio recording after the interview ended. Accordingly, Howard's testimony regarding Detective Prieto' alleged scheme[5] demonstrates that Howard was made aware of the nature of his *Miranda* rights, ironically, by Detective Prieto's alleged silence. The court, therefore,

---

[5] The court does not find Howard's testimony regarding Detective Prieto's scheme credible.

8

concludes that Howard was adequately notified of his *Miranda* rights.

2.    <u>Whether Howard's Waiver was Valid</u>

The court next considers whether Howard validly waived his *Miranda* rights. An accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused "in fact knowingly and voluntarily waived [*Miranda*] rights" when making the statement. *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (citing *N. Carolina v. Butler*, 441 U.S. 369, 373 (1979)). The waiver inquiry "has two distinct dimensions:" waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Thompkins*, 560 U.S. at 382 (citing *Burbine*, 475 U.S. at 421). A valid waiver of *Miranda* rights depends upon the "totality of the circumstances including the background, experience, and conduct of defendant." *Butler*, 441 U.S. at 374–75; *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). "Any waiver, express or implied, may be contradicted by an invocation at any time. If the right to counsel or the right to remain silent is invoked at any point during questioning, further interrogation must cease." *Thompkins*, 560, U.S. at 387–88; *Miranda*, 384 U.S. at 473–74 ("If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.").

Howard's waiver was initially valid. Immediately after Detective Prieto informed Howard of his *Miranda* rights, Howard said, "Yeah," and engaged Detective Prieto in conversation. (*See* Trans. (#103-1) at 2:9–13, *et seq*.). Howard's verbal assent and subsequent conduct convey that Howard knowingly waived his rights and that he was free from compulsion when he did so. This satisfies *Miranda*. *See Thompkins*, 560 U.S. at 387 ("The *Butler* Court held that courts can infer a waiver of *Miranda* rights 'from the actions and words of the person interrogated.'") (citation omitted).

### 3.   Whether Howard Withdrew his Waiver & Invoked his Rights

Having decided that Howard was properly mirandized and validly waived his *Miranda* rights, the court next considers whether Howard withdrew his waiver and invoked his *Miranda* rights during the interrogation. After reviewing the audio recording, transcript, and the parties' arguments, the court finds that Detective Prieto violated Howard's *Miranda* rights at two points during the interrogation.

The first violation occurred while discussing the alleged robberies that are the subject of this instant prosecution. Approximately fourteen minutes and forty seven seconds into the interrogation, Prieto asked the following questions:

| | |
|---|---|
| Prieto: | Okay, well talk to me about this then. |
| **Howard:** | **No.** |
| Prieto: | Look it, do you—if you want to be truthful, somebody's gonna have to say, "Oh, well you know what, Abdul was truthful." |
| Howard: | Yeah. |
| Prieto: | Okay, so start talking to me. |
| **Howard:** | **No, No.** |
| Prieto: | Okay, start talking to me about this then. Let's just be . . . |
| **Howard:** | **No**—I'm gonna, I'm gonna, I'm gonna put it in the emphasis type of way, you know what I'm saying, uh, you know, I ain't gonna lie, you know what I'm saying. I had an alcohol drug problem, you know what I mean and, you know, there's a possibility, you know what I'm saying that uh . . . |
| Prieto: | But just look it, okay, don't do possibilities on me. |
| Howard: | You know . . . |
| Prieto: | Okay, Did you take the money from the 7-Eleven because you've got an addiction problem, your drug problem? Is that why you did it? Yes or no? |
| Howard: | See that's what I'm saying. |
| Prieto: | Dude, you know, okay, listen, Abdul, like I told you it doesn't matter. |
| **Howard:** | **It, it—I mean it matters because if—if I admit guilt to you and I decided to go to trial . . .** |
| Prieto: | Dude, let me just tell you, it—you can't—okay. You're not gonna—you can go to trial for anything, believe me . . . |

(*See* Trans. (#103-1) at 11:277–307) (emphasis added). After this exchange, Howard incriminated himself. This violated *Miranda*. *See Miranda*, 384 U.S. at 474–75 ("If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must

10

cease.").

During the court's March 26, 2014 hearing, the Government argued that Howard's statement, "No, no," was incorrectly transcribed and should read, "Ya know, ya know." (*See* Mins. Proceedings #126). This, the Government argued, would demonstrate that Howard consented to continuing the conversation. (*Id.*) The court disagrees. Even if the transcript and audio recording clearly conveyed that Howard said, "Ya know, ya know" and not, "No, no"—which it does not—the court would still conclude that Howard invoked his right to remain silent. Three facts support this conclusion.

First, Howard immediately stated "[n]o" after Detective Prieto first said, "Okay, let's talk about this then." (Trans. (#103-1) at 11:285–86). This "no" unequivocally demonstrates Howard's desire to remain silent. *See Miranda*, 384 U.S. at 474–75.

Second, although it does not appear on the transcript, during its review of the audio recording the court heard Howard say "no" again after Detective Prieto stated: "Okay, start talking to me about this then. Let's just be . . ." (*See* Trans. (#103-1) at 11:292–93). Detective Prieto's refusal to stop questioning at this point also violated *Miranda*. *See Miranda*, 384 U.S. at 474–75.

Third, Howard resolved any doubt as to whether he invoked his *Miranda* rights when he explained to Detective Prieto why Howard refused to talk:

> Prieto:    Dude, you know, okay, listen, Abdul, like I told you it doesn't matter.
> Howard:    It, it—I mean it matters because if—if I admit guilt to you and I decided to go to trial . . .
> Prieto:    Dude, let me just tell you, it—you can't—okay. You're not gonna—you can go to trial for anything, believe me . . .

(Trans. (#103-1) at 11:303–07). Despite the fact that Howard explained to Detective Prieto that admitting guilt would affect his rights at trial, Detective Prieto continued the interrogation. This violated *Miranda*. *Miranda*, 384 U.S. at 474–75.

11

Accordingly, even if Howard said, "[y]a know, ya know," the audio recording and transcript demonstrate that Detective Prieto ignored Howard's invocation of his *Miranda* rights three times. However, the court finds that Howard did say, "[n]o, no," as reflected by the transcript, and not "[y]a know, ya know," as asserted by the Government. During the court's March 26, 2014 hearing, the Government proffered facially credible testimony that the transcript should read, "[y]a know, ya know." (*See* Mins. Proceedings #126). This evidence is contradicted by the court's *in camera* review of the audio recording. Simply put, aside from Detective Prieto's testimony, there is no indication that Howard said "[y]a know, ya know."

Additionally, the context in which the disputed words (i.e., "no, no" and "ya know, ya know") were uttered compels the conclusion that Howard said, "[n]o, no." Howard initial said "no" when Detective Prieto asked him to speak. (Trans. (#103-1) at 11:285–86). Howard, then, said "no" a second time when asked to speak again. (*See id*. at 11:292–93). Finally, Howard was forced to explain why he refused to speak when Detective Prieto asked again: "It, it—I mean it matters because if—if I admit guilt to you and I decided to go to trial . . ." (*Id*. at 11:304–05). Howard's repeated desire to remain silent compels the conclusion that Howard said, "[n]o, no" rather than—as the Government assets— "[y]a know, ya know."

Therefore, the court recommends suppressing the Government's evidence after Howard's initial invocation of his right to remain silent, which occurred at line 286.

Additionally, the court also finds that Detective Prieto violated Howard's *Miranda* rights later in the interrogation. Toward the end of the interview, Detective Prieto asked Howard about an alleged rape, which Howard is not indicted for in this matter. (*See* Trans. (#103-1) at 56:1682). In response, Howard stated: "I don't want to talk about—I don't want to talk about that no more." (*Id*). Despite Howard's invocation of his right to remain silent, Detective Prieto continued questioning Howard. (*See id*.) This

violated Howard's *Miranda* rights. *See Miranda*, 384 U.S. at 474–75 ("If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."). During the court's hearing, the Government conceded that Howard's statement should be construed as his invocation of his right to remain silent. (*See* Mins. Proceedings #116). The court agrees. Accordingly, the court recommends suppressing all of Howard's statements following his invocation of his right to remain silent.

Therefore, the court further recommends suppressing Howard's statements related to the alleged rape.[6]

## IV.    **Whether Howard's Statements were "Involuntary"**

Finally, Howard alleges his confessions were involuntary and unconstitutional because they were "made using . . . a different voice in lieu of his own voice." (*See* Def.'s Mot. to Suppress (#91) at 8:22–24). Various constitutional provisions protect against "involuntary" confessions.[7] However, before the court even considers suppressing an involuntary statement, the moving papers must be "sufficiently definite, specific, detailed, and nonconjectural." *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000).

Howard failed to satisfy this standard. In full, Howard's involuntariness argument reads: "The alleged confessions to the various committed robberies were not made by Mr. Howard. The statements were made using what Mr. Howard alleges is a different voice in lieu of his own voice." This is conclusory and unpersuasive. *See  Randle*, 966 F.2d at 1212 ("A defendant who seeks to suppress

---

[6] Alternatively, the court recommends excluding the statements as irrelevant under Federal Rule of Evidence 401.

[7] The Fifth Amendment's privilege against self-incrimination, *see Bram v. United States*, 168 U.S. 532 (1897), and the Fifth and Fourteenth Amendments' due process clauses, *see Brown v. Mississippi*, 296 U.S. 278 (1936); *Malloy v. Hogan*, 378 U.S. 1 (1964), create a constitutional right against the use of "involuntary" confessions at trial. *See also Rex v. Warickshall*, [1783] 168 Eng. Rep. 234, 235 ("No credit [should be given] to a confession forced from the mind by flattery or hope, or by the torture of fear.").

evidence bears the burden of making a prima facie showing of illegality. Reliance on vague, conclusory allegations is insufficient." (citation omitted)).

Therefore, the court recommends denying Howard's motion on the grounds that his confession was involuntary.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Abdul Howard's motion to suppress (#91) be GRANTED in part and DENIED in part.

IT IS FURTHER RECOMMENDED that Abdul Howard's incriminating statements relating to the alleged robberies and alleged rape be SUPPRESSED under *Miranda v. Arizona*.

IT IS FURTHER RECOMMENDED that Abdul Howard's motion to suppress on involuntariness grounds be DENIED.

IT IS SO SUPPRESSED.

DATED this 1st day of April, 2014.


_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE